UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| AMANDA ARROYO<br>On behalf of herself and all others<br>similarly situated,<br><br>    Plaintiff,<br>v.<br><br>WESLEYAN VILLAGE, LLC, et al.,<br><br>    Defendants. | CASE NO. 1:20-cv-00866-CAB<br><br>JUDGE CHRISTOPHER A. BOYKO<br><br>**JOINT MOTION FOR**<br>**PRELIMINARY APPROVAL OF**<br>**CLASS AND COLLECTIVE**<br>**ACTION SETTLEMENT** |

Plaintiff Amanda Arroyo and Defendants Wesleyan Village, LLC, Life Care Services, LLC, and Northwood Healthcare Group, LLC, respectfully and jointly move the Court to (1) conditionally certify this case as a collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), (2) certify a proposed Settlement Class pursuant to Fed. R. Civ. P. 23, (3) preliminarily approve the proposed settlement of Settlement Class Members' state-law claims pursuant to Rule 23(e), (4) approve a proposed notice to Settlement Class Members, and (5) schedule a Final Fairness Hearing at which final approval may be determined. A Proposed Preliminary Approval Order is attached as Appendix B to Exhibit 1.

The terms of the proposed Settlement are set forth in the parties' Agreement of Settlement and Release ("Settlement Agreement") attached as Exhibit 1. The Settlement will apply to Plaintiff Arroyo, the Opt-ins who join the case pursuant to 29 U.S.C. § 216(b), and all members of the proposed Settlement Class. The Potential Opt-Ins and Settlement Class members are coextensive, consisting of:

> All non-exempt hourly employees who worked at the Wesleyan Village Senior Living Center between January 1, 2017 and April 30, 2020 and for whom Defendants' time and pay records support claims for alleged underpayment of shift differentials or overtime compensation in one or more pay periods and whose claims are not preempted by the Labor Management Relations Act.

*See* Settlement Agreement (Exhibit 1) at ¶ 4. These individuals are identified in the Roster of Settlement Class Members jointly prepared by the parties and attached as Appendix A to Exhibit 1.

The Settlement will resolve bona fide disputes involving overtime compensation under Ohio Rev. Code Ann. § 4111.03 and Ohio's Prompt Pay Act. Plaintiff alleged that she and other similarly-situated employees were underpaid for shift differentials, and/or overtime compensation. Defendants denied and continue to deny those claims.

The parties are represented by experienced counsel. Extensive investigation was conducted on both sides and settlement negotiations were rigorous. The parties believe the resulting agreement appropriately balances the expenses, risks, and possible outcomes of protracted litigation on the merits. For the Plaintiff and proposed Settlement Class Members, the Settlement will eliminate the risk and delay of litigation and make substantial payments available to all persons believed to be entitled to them.

The following settlement documents and proposed orders are submitted for approval or entry by the Court:

Exhibit 1: Agreement of Settlement and Release ("Settlement Agreement")[1]

---

[1] Counsel are currently obtaining signatures on the Settlement Agreement, and the signed Agreement will be filed shortly.

Appendix A: Roster of Settlement Class Members

Exhibit 2: Proposed Preliminary Approval Order (providing for notice and hearing)

Exhibit 3: Proposed Notice to Settlement Class Members

The sections below explain the litigation, the negotiations, the Settlement terms, the proposed settlement payments and distributions, and the propriety of approval.

## I. THE LITIGATION

### A. The Claims and Issues

Plaintiff Amanda Arroyo filed a Class and Collective Action Complaint against Defendants (ECF #1) on April 22, 2020. Plaintiff alleged that she and other similarly-situated employees at Wesleyan Village Senior Living Center ("Wesleyan Village") were underpaid overtime compensation as a result of Defendants' exclusion of certain non-excludable remuneration in their regular rate calculation, and were also underpaid certain promised shift differentials. Defendant Wesleyan Village, LLC, owner of Wesleyan Village, and Defendants Life Care Services, LLC and Northwood Healthcare Group, LLC, each of which provided management services at Wesleyan Village in the time period relevant to this case, denied all claims.

### B. Joint Motion to Stay Pending Evidence Exchange and Mediation

On June 22, 2020, Plaintiff and Defendants Wesleyan Village, LLC and Life Care Services, LLC moved the Court for a stay of this case so that they could participate in an informal discovery exchange and go to mediation (ECF #5). On June 24, 2020, the Court granted that motion (ECF #10). On August 11, 2020, Defendant Northwood Healthcare

Group, LLC requested that the stay Order be extended to apply to the claims against it as well, and the Court granted that request on September 23, 2020 (ECF #15, 16).

C. **Exchange and Due Diligence Analysis of Time and Pay Records**

The parties scheduled a private mediation on September 28, 2020 with mediator Frank Ray. Defendant Life Care Services, LLC maintained all relevant time and pay records for the class members for dates preceding July 7, 2019, and Defendants Wesleyan Village, LLC and Northwood Healthcare Group maintained all relevant time and pay records for July 7, 2019 forward. Before the mediation, both sets of Defendants produced time and pay records purporting to cover all non-exempt employees during the period January 1, 2017 to April 30, 2020.

Analysis of the records was intensive and required dozens of attorney hours. By way of a few examples, the pre-July 7, 2019 time and pay records were maintained in a different format than the post-July 7, 2019 records. Defendants' pay practices also changed when management of the building switched from Life Care Services to Northwood Healthcare Group. Calculation of underpayments was rendered difficult by the fact that some Wesleyan Village employees were paid for overtime under the FLSA's default forty hours per workweek regime, while others were paid overtime when working over 8 hours in a day or 80 hours in a two-week pay period, as permitted under 29 CFR § 778.601. Many of the class members were unionized and subject to a collective bargaining agreement covering various aspects of their pay at Wesleyan Village. Plaintiff had to conduct a detailed and exhaustive analysis of which alleged pay shortfalls were governed by the CBA and therefore preempted by the Labor Management Relations Act.

4

*See e.g. DeCoe v. GMC*, 32 F.3d 212, 216 (6th Cir. 1994) (stating that "section 301 [of the Labor Management Relations Act] preempts state law rules that substantially implicate the meaning of collective bargaining agreement terms."). Only those claimed shortfalls not within the scope of the CBA could be pursued in this action.

### D. Mediation, Lifting of Stay, and Further Negotiations

The parties participated in a full-day mediation on September 28, 2020. Substantial progress was made, but no settlement was reached. Specifically, the parties differed on two issues: (1) their respective evaluation of damages – primarily which (if any) types of pay were to be included in the regular rate calculation, and (2) the scope of information covered by the pleadings. As to the latter, Plaintiff challenged that the materials provided by Defendants for the period July 7, 2019 through April 30, 2020 covered the entire putative class.

Over the next several months, the parties continued to discuss a settlement, and continued to exchange information necessary to analyze damages and the proper scope of the putative class. Additional records provided by Defendants initially failed to resolve Plaintiff's questions and bridge the gap between the parties' differences. After further negotiations over what set of records would permit a complete and final analysis of the disputed issues, on May 5, 2021, the parties filed a Stipulated Protective Order to permit the confidential exchange of the balance of necessary records.

The Stipulated Protective Order was entered on May 11, 2021, and Defendants produced the additional records on June 5, 2021. The final group of records permitted the parties to come to an understanding of who would be considered as part of the

5

putative class and confirm what damages could be available to Plaintiff and the putative class under Plaintiff's theory of the case.

With the parties now on the same page as to those issues, settlement negotiations began again and, after continued bargaining as to the settlement amount and mutual consideration of the structure, the parties reached the proposed settlement presented herein. The parties believe the settlement appropriately balances the expenses, risks, and possible outcomes of protracted litigation. For the Plaintiff and Settlement Class Members, the proposed settlement will eliminate the risk and delay of litigation and make substantial payments available to all persons believed to have been affected by the alleged pay practices.

## II. THE TERMS OF THE SETTLEMENT AND RELEASE OF CLAIMS

### A. The Scope of Settlement

The proposed settlement resolves the disputed claims in two ways. One, the settlement will resolve the FLSA claims of Plaintiff Arroyo and similarly-situated employees who opt-in to the case pursuant to 29 U.S.C. § 216(b). Second, the settlement will resolve state-law wage-and-hour claims of all members of the proposed Settlement Class pursuant to Fed. R. Civ. P. 23€ based upon the facts alleged in Plaintiff's Complaint.

### B. The Proposed Settlement Payments and Distributions

<u>Total Settlement Amount</u>. Defendants have agreed to pay the Total Settlement Amount of $215,000.00, as set forth in the Settlement Agreement.

<u>Collective and Class Payments</u>. The Total Settlement Amount, after deduction of a Service Award, Attorneys' Fees, Claims Administrator's Costs, and Reimbursed

Litigation Expenses (the "Net Proceeds"), will be distributed to the Plaintiff and Settlement Class Members in individual settlement payments as follows.

Method of Allocation. All recipients will receive a settlement payment distribution proportionate to their estimated unpaid wages between January 1, 2017 and April 30, 2020 based on their actual time and pay records maintained by Defendants. Those records permitted the parties to closely estimate the actual damages sustained on a per-person basis. All Settlement Class Members will receive an amount exceeding their actual alleged unpaid wages – roughly double the unpaid wages by Plaintiff's calculati-n - as determined from analysis of Defendants' time and pay records. A $25.00 payment will be allocated to all Class Members whose estimated actual unpaid wages fell below that amount.

Distribution of Notice. The parties shall jointly select a Claims Administrator. Within ten days of the Preliminary Approval Order being filed by the Court, Defendants will provide to Plaintiff's Counsel and the Claims Administrator all last known mailing addresses for all individuals in the Roster at Appendix A to Exhibit 1. Within ten days of those addresses being provided, the Claims Administrator shall distribute Notice via regular mail. The Notice dictates that any requests for exclusion from the Class or objections to the Settlement be made in writing to the Claims Administrator within 45 days of distribution of the Notice.

Opt-In Procedure. Checks to Settlement Class Members will bear the following language:

> By signing, depositing, cashing or otherwise negotiating this check, I consent to be a party plaintiff in *Arroyo v. Wesleyan Village, LLC, et al.*, and release and waive all claims under the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.* By signing, depositing, cashing or otherwise negotiating this check, I will be a party plaintiff accepting the settlement check, not opting out of the settlement, and giving up the right to sue under the Fair Labor Standards Act and state wage and hour laws.

Signature, deposit, cashing, or negotiation of the check will constitute opting into this settlement pursuant to 29 U.S.C. §216(b). Settlement Class Members will have 270 days from initial distribution of settlement checks to sign, deposit, cash, or otherwise negotiate their checks.

Service Award. The proposed Settlement provides for a service award of $5,000.00 to Plaintiff Amanda Arroyo in recognition of her assistance to Plaintiff's Counsel and her vital contribution to achieving the Settlement on behalf of all Opt-Ins and Class Members.

Attorneys' Fees and Cost Reimbursements. The proposed settlement includes a payment of $55,000.00 to Plaintiff's counsel for attorneys' fees and $2,361.05 in reimbursement of litigation costs.

Claims Administrator's Costs. The parties have selected Rust Consulting to administer the settlement, including distributing notice, re-distributing notices that are returned as undeliverable, creating a qualified settlement fund, distributing awards to the opt-ins and class, and distributing tax forms to the opt-ins and class. The proposed settlement includes payment of $9,440 to Rust Consulting as compensation for those services.

## III. THE PROPRIETY OF APPROVAL

As to the Plaintiffs and Opt-Ins, the settlement must qualify for Court approval under the FLSA, 29 U.S.C. § 216(b). The Court must ensure "there is a bona fide dispute between the parties as to the employer's liability under the FLSA" and that the proposed settlement "is fair, reasonable, and adequate." *Kritzer v. Safelite Solutions, LLC*, 2012 U.S. Dist. LEXIS 74994, at *19 (S.D. Ohio May 30, 2012). *Accord In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 381-82 (S.D. Ohio 2006); *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946))).

Rule 23 requires a two-fold determination. Rule 23 authorizes the Court to certify the Settlement Class if it satisfies "the four prerequisites of Rule 23(a)"—numerosity, commonality, typicality, and adequate representation—and "meet[s] at least one of the three requirements listed in Rule 23(b)." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F. 3d 838, 850 (6th Cir. 2013). *See Gilbert v. Abercrombie & Fitch Co.*, 2016 U.S. Dist. LEXIS 103441 (S.D. Ohio Aug. 5, 2016) (Order by Smith, J.) (granting preliminary approval of a class settlement) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *Stout v. J.D. Byrider*, 228 F.3d 709, 716 (6th Cir. 2000)); *Kis v. Covelli Enterprises, Inc.*, 2020 U.S. Dist. LEXIS 93929 (N.D. Ohio May 29, 2020) (Gwin, J.) (granting final approval). Rule 23(e) provides that the Court may approve the class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." *See, e.g., Gilbert*, 2016 U.S. Dist. LEXIS 103441, *22 (granting final approval of a class settlement

upon the ground that it was "fair, reasonable and adequate as to each of the Parties"). *Accord*, *Kis*, 2020 U.S. Dist. LEXIS 93929, at *7.

The proposed Settlement satisfies all of these prerequisites and standards for purposes of this settlement, as shown below.

### A. The Proposed Settlement Class Should be Certified

Certification of the proposed Settlement Class will enable the parties to resolve the state-law claims of Plaintiff and all other class members. Rule 23 authorizes the Court to certify a class that satisfies "the four prerequisites of Rule 23(a)"—numerosity, commonality, typicality, and adequate representation—and "meet[s] at least one of the three requirements listed in Rule 23(b)." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F. 3d 838, 850 (6th Cir. 2013).

**Numerosity.** The proposed Settlement Class consists of two-hundred and seventy employees who worked at Wesleyan Village between January 1, 2017 through April 30, 2020.

**Commonality and typicality.** Plaintiff's Complaint asserts claims under Ohio's wage-and-hour laws and Prompt Pay Act on behalf of all Settlement Class Members. All members of the Settlement Class, including Plaintiff, have these claims and evidence of the same alleged damages from Defendants' time and pay records. Adjudicating them on a classwide basis would "generate common answers that are likely to drive resolution of the lawsuit." *Arlington Video Productions, Inc. v. Fifth Third Bancorp*, 2013 WL 560635, at *14 (6th Cir. Feb. 14, 2013).

**Adequacy of Representation.** Plaintiff Arroyo has aggressively pursued the interests of Class Members, and her counsel has extensive experience in class action litigation including wage-and-hour cases. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012) (class representatives "must have common interests with unnamed members" and "it must appear that [they] will vigorously prosecute the interests of the class through qualified counsel") (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996) (citation omitted)).

**Predominance.** Whether Plaintiff and other employees were properly paid overtime and shift differentials were the key issues in this litigation, and those claims were the primary issue driving the proposed Settlement. Common issues clearly predominate "over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

**Superiority.** The present case is precisely the type of case in which class litigation is the superior method of adjudication. Here, as *In re Whirlpool*, "class members are not likely to file individual actions" because "the cost of litigation would dwarf any potential recovery." *In re Whirlpool*, 722 F.3d at 861 (citing *Amgen*, 133 S. Ct. at 1202; *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997)).

### B. The Proposed Notice Should Be Approved

The proposed Notice to Settlement Class Members ("Notice") should be approved. The Notice describes the background of the case and summarizes the terms of the settlement, including the method of allocating individual payments in return for a release. The Notice informs Settlement Class Members how to object to the Settlement or

request exclusion from the Class if they so choose. If approved, the Notice will be sent to Settlement Class Members by first class mail. *See* Fed. R. Civ. P. 23(c)(2) (requiring "the best notice that is practicable under the circumstances, including individual notice to all members … [by] United States mail, electronic means, or other appropriate means"); *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173-77 (1974) ("individual notice" must be given "to all members who can be identified through reasonable effort"); *Zimmer Paper Products, Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985) ("first-class mail … fully satisfy the notice requirements of both [Rule] 23 and the due process clause").

### C. <u>The Settlement Is Fair, Reasonable, and Adequate</u>

In *Gascho v. Global Fitness Holdings, LLC*, 822 F. 3d 269 (6th Cir. 2016), the Sixth Circuit reaffirmed the seven-factor standard often used to evaluate whether a class settlement is "fair, reasonable, and adequate."

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Gascho*, 822 F. 3d at 276-77 (quoting *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). *See Kritzer v. Safelite Solutions, LLC*, 2012 U.S. Dist. LEXIS 74994, at *19-20 (S.D. Ohio May 30, 2012) (using a variation of the seven-factor standard to evaluate whether the proposed settlement was "fair, reasonable, and adequate" for purposes of the FLSA, 29 U.S.C. 216(b)). *See also Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008) (applying an alternative formulation of the seven-factors) (citing *UAW v.*

12

*General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992)); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)).

As a part of the scrutiny it applies to an FLSA collective action settlement, the Court should "ensure that the distribution of settlement proceeds is equitable." *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *26 (citing *Rotuna v. West Customer Mgmt. Group, LLC,* No. 4:09cv1608, 2010 WL 2490989, at *6 (N.D. Ohio June 15, 2010) (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999))). *Accord Kis,* 2020 U.S. Dist. LEXIS 93929, at *7.

In the present case, the proposed Settlement will make individual settlement payments to the Plaintiff and the Settlement Class Members according to a fair and reasonable method of allocation. By Plaintiff's calculation, they will receive over 90% of the compensation (actual and liquidated damages) available to them under the claims pled by Plaintiff in this action. The amounts will be distributed in proportion to their actual losses, as reflected in time and pay records maintained by the Defendants.

The first factor—the likelihood of success on the merits balanced against the amount and form of the settlement—strongly supports approval. Litigating wage-and-hour claims is always risky and uncertain, and Plaintiff would have to establish not only Defendants' liability, which Defendants vehemently deny, but also the Class Members' damages. The proposed Settlement will eliminate the risk and delay of litigation and make settlement payments to all.

The other six factors are satisfied as well. There is no guarantee that Plaintiff will prevail at trial as Defendants contend that some or all of the compensation at issue is

excludable from employees' regular rate of pay calculation. Moreover, even if Plaintiff is successful at trial, the parties dispute whether she and the Class Members are entitled to a three-year (versus two-year) lookback period preceding the filing of this case, or liquidated damages. Plaintiff would have to prove willfulness of Defendants' alleged violations, which Defendants strenuously dispute.

In contrast, the Settlement ensures that the Plaintiffs and Settlement Class Members will receive compensation. Thus, the settlement substantially benefits them, and is in the public interest. *See Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *24 (the public interest is served when a settlement "ends potentially long and protracted litigation").

### D. The Proposed Service Award Is Proper and Reasonable

Reasonable service awards "are common in class action settlement[s] and [are] routinely approved for the simple reason 'to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *26 (citing *Rotuna v. West Customer Mgmt. Group, LLC*, No. 4:09cv1608, 2010 WL 2490989, at *7). *Accord*, *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 373 (S.D. Ohio 1990). Service awards are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution of the case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997).

In the present case, the proposed service award to Plaintiff Arroyo is amply justified by her assistance to Plaintiff's Counsel and her vital contribution to achieving

14

the Settlement on behalf of all Opt-Ins and Class Members. She provided extensive information and records to Plaintiff's Counsel, assisted greatly in the analysis of the records produced by Defendants - particularly whether those records covered the entire putative class, and participated in the full-day mediation.

### E. The Attorneys' Fees Are Proper and Reasonable

Ohio wage-and-hour statutes also provide for "costs and reasonable attorney's fees as may be allowed by the court." Ohio Rev. Code Ann. § 4111.10. In the present case, the proposed payments of $52,638.95 in attorneys' fees and $2,361.05 in reimbursed litigation costs are reasonable. The proposed fees are 24.5% of the Total Settlement Amount, and will fall far below counsel's lodestar by the time that the case is concluded. *See Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, at *21 (N.D. Ohio Mar. 8, 2010) (study conducted by the National Economic Research Associates found that "regardless of size, attorneys' fees average approximately 32% of [class action] settlement[s]"); *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000) (citing the NERA study as "[t]he most complete analysis of fee awards in class actions conducted to date"). *See Kis,* 2020 U.S. Dist. LEXIS 93929, at *11 (approving a one-third fee award).

## IV. CONCLUSION

For the reasons addressed above, the parties respectfully request that the Court enter the Proposed Preliminary Approval Order, attached as Appendix B to Exhibit 1.

Respectfully submitted,

 */s/ Scott D. Perlmuter*
SCOTT D. PERLMUTER (0082856)
**TITTLE & PERLMUTER**

4106 Bridge Avenue
Cleveland, OH 44113
Phone:216-285-9991
Fax: 888-604-9299
Email: scott@tittlelawfirm.com

*Attorney for Plaintiff*


*/s/ William Mattes (by consent)*
William M. Mattes
Jacqueline N. Rau
Justin M. Burns
Dinsmore & Shohl - Columbus
Ste. 300
191 West Nationwide Blvd.
Columbus, OH 43215
614-628-6883
Fax: 614-628-6890
Email: bill.mattes@dinsmore.com
Email: jacqueline.rau@dinsmore.com
Email: justin.burns@dinsmore.com

*Attorneys for Wesleyan Village, LLC and Northwood Healthcare Group, LLC*

*/s/ Robert Bowes (by consent)*
Robert J. Bowes , III
Vincent J. Tersigni
Jackson Lewis - Cleveland
400 Park Center Plaza I
6100 Oak Tree Blvd.
Cleveland, OH 44131
216-750-0404
Fax: 216-750-0826
Email: robert.bowes@jacksonlewis.com
Email: vincent.tersigni@jacksonlewis.com

*Attorneys for Life Care Services, LLC*

PROOF OF SERVICE

I certify that on January 10, 2021 the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

*s/ Scott D. Perlmuter*
Scott D. Perlmuter (0082856)