UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AMANDA ARROYO<br>On behalf of herself and all others<br>similarly situated, | ) ) ) | CASE NO. 1:20-cv-00866-CAB<br><br>JUDGE CHRISTOPHER A. BOYKO |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **AMENDED JOINT MOTION FOR<br>PRELIMINARY APPROVAL OF** |
| WESLEYAN VILLAGE, LLC, et al., | ) ) | **CLASS AND COLLECTIVE<br>ACTION SETTLEMENT** |
| Defendants. | ) | |

Plaintiff Amanda Arroyo and Defendants Wesleyan Village, LLC, Life Care Services, LLC, and Northwood Healthcare Group, LLC, respectfully file this Amended Joint Motion for Preliminary Approval of Class and Collective Action Settlement, to address the Court's concerns raised in ECF No. 31.  It describes the process for FLSA consents to be filed with the Court (see pages 18-20, below, and the Settlement Agreement at Exhibit 1, ¶ 5), and further sets forth how Plaintiff, the Potential Opt-Ins, and the Settlement Class are similarly-situated with respect to the claims at issue in this case (see pages 16-18, below, and the Declaration of Class Counsel, at Exhibit 4).

The parties jointly move the Court to (1) conditionally certify this case as a collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), (2) certify a proposed Settlement Class pursuant to Fed. R. Civ. P. 23, (3) preliminarily approve the proposed settlement of Settlement Class Members' state-law claims pursuant to Rule 23(e), (4) approve a proposed notice to Settlement Class Members, and (5) schedule a Final Fairness Hearing at which final approval may be determined.  A

Proposed Preliminary Approval Order is attached as Exhibit 2.  A proposed Final Order will be filed in advance of the Fairness Hearing, and Plaintiff's counsel will simultaneously file a declaration reporting as to the existence or absence of class members seeking exclusion.

The terms of the proposed Settlement are set forth in the parties' Agreement of Settlement and Release ("Settlement Agreement") attached as Exhibit 1. The Settlement will apply to Plaintiff Arroyo, the Opt-ins who join the case pursuant to 29 U.S.C. § 216(b), and all members of the proposed Settlement Class.  The Potential Opt-Ins and Settlement Class members are coextensive, consisting of:

> All non-exempt hourly employees who worked at the Wesleyan Village Senior Living Center between January 1, 2017 and April 30, 2020 and for whom Defendants' time and pay records support claims for alleged underpayment of shift differentials or overtime compensation in one or more pay periods and whose claims are not preempted by the Labor Management Relations Act.

*See* Settlement Agreement, at Exhibit 1, ¶ 4.  These individuals are identified in the Roster of Settlement Class Members jointly prepared by the parties and attached as Appendix A to Exhibit 1.

The Settlement will resolve bona fide disputes involving overtime compensation under Ohio Rev. Code Ann. § 4111.03 and Ohio's Prompt Pay Act.  Plaintiff alleged that she and other similarly-situated employees were underpaid for shift differentials, and/or overtime compensation.  Defendants denied and continue to deny those claims.

The parties are represented by experienced counsel.  Extensive investigation was conducted on both sides and settlement negotiations were rigorous.  The parties believe

2

the resulting agreement appropriately balances the expenses, risks, and possible outcomes of protracted litigation on the merits. For the Plaintiff, the potential Opt-Ins, and proposed Settlement Class Members, the Settlement will eliminate the risk and delay of litigation and make substantial payments available to all persons believed to be entitled to them.

The following settlement documents and proposed orders are submitted for approval or entry by the Court:

Exhibit 1: Agreement of Settlement and Release ("Settlement Agreement")

Appendix A: Roster of Settlement Class Members

Exhibit 2: Proposed Preliminary Approval Order (providing for notice and hearing)

Exhibit 3: Proposed Notice to Settlement Class Members

Exhibit 4: Declaration of Class Counsel Scott Perlmuter

The sections below explain the litigation, the negotiations, the Settlement terms, the proposed settlement payments and distributions, and the propriety of approval.

## I. THE LITIGATION

### A. The Claims and Issues

Plaintiff Amanda Arroyo filed a Class and Collective Action Complaint against Defendants (ECF #1) on April 22, 2020. Plaintiff alleged that she and other similarly-situated employees at Wesleyan Village Senior Living Center ("Wesleyan Village") were underpaid overtime compensation as a result of Defendants' exclusion of certain non-excludable remuneration in their regular rate calculation, and were also underpaid

certain promised shift differentials.  Defendant Wesleyan Village, LLC, owner of Wesleyan Village, and Defendants Life Care Services, LLC and Northwood Healthcare Group, LLC, each of which provided management services at Wesleyan Village in the time period relevant to this case, denied all claims.

### B.  Joint Motion to Stay Pending Evidence Exchange and Mediation

On June 22, 2020, Plaintiff and Defendants Wesleyan Village, LLC and Life Care Services, LLC moved the Court for a stay of this case so that they could participate in an informal discovery exchange and go to mediation (ECF #5).  On June 24, 2020, the Court granted that motion (ECF #10).  On August 11, 2020, Defendant Northwood Healthcare Group, LLC requested that the stay Order be extended to apply to the claims against it as well, and the Court granted that request on September 23, 2020 (ECF #15, 16).

### C.  Exchange and Due Diligence Analysis of Time and Pay Records

The parties scheduled a private mediation on September 28, 2020 with mediator Frank Ray.  Defendant Life Care Services, LLC maintained all relevant time and pay records for the class members for dates preceding July 7, 2019, and Defendants Wesleyan Village, LLC and Northwood Healthcare Group maintained all relevant time and pay records for July 7, 2019 forward.  Before the mediation, both sets of Defendants produced time and pay records purporting to cover all non-exempt employees during the period January 1, 2017 to April 30, 2020.

Analysis of the records was intensive and required dozens of attorney hours.  By way of a few examples, the pre-July 7, 2019 time and pay records were maintained in a different format than the post-July 7, 2019 records.  Defendants' pay practices also

changed when management of the building switched from Life Care Services to Northwood Healthcare Group.  Calculation of underpayments was rendered difficult by the fact that some Wesleyan Village employees were paid for overtime under the FLSA's default forty hours per workweek regime, while others were paid overtime when working over 8 hours in a day or 80 hours in a two-week pay period, as permitted under 29 CFR § 778.601.  Many of the class members were unionized and subject to a collective bargaining agreement covering various aspects of their pay at Wesleyan Village.  Plaintiff had to conduct a detailed and exhaustive analysis of which alleged pay shortfalls were governed by the CBA and therefore preempted by the Labor Management Relations Act.  *See e.g. DeCoe v. GMC*, 32 F.3d 212, 216 (6th Cir. 1994) (stating that "section 301 [of the Labor Management Relations Act] preempts state law rules that substantially implicate the meaning of collective bargaining agreement terms.").  Only those claimed shortfalls not within the scope of the CBA could be pursued in this action.

### D. Mediation, Lifting of Stay, and Further Negotiations

The parties participated in a full-day mediation on September 28, 2020.  Substantial progress was made, but no settlement was reached.  Specifically, the parties differed on two issues: (1) their respective evaluation of damages – primarily which (if any) types of pay were to be included in the regular rate calculation, and (2) the scope of information covered by the pleadings.  As to the latter, Plaintiff challenged that the materials provided by Defendants for the period July 7, 2019 through April 30, 2020 covered the entire putative class.

Over the next several months, the parties continued to discuss a settlement, and continued to exchange information necessary to analyze damages and the proper scope of the putative class. Additional records provided by Defendants initially failed to resolve Plaintiff's questions and bridge the gap between the parties' differences. After further negotiations over what set of records would permit a complete and final analysis of the disputed issues, on May 5, 2021, the parties filed a Stipulated Protective Order to permit the confidential exchange of the balance of necessary records.

The Stipulated Protective Order was entered on May 11, 2021, and Defendants produced the additional records on June 5, 2021. The final group of records permitted the parties to come to an understanding of who would be considered as part of the putative class and confirm what damages could be available to Plaintiff and the putative class under Plaintiff's theory of the case.

With the parties now on the same page as to those issues, settlement negotiations began again and, after continued bargaining as to the settlement amount and mutual consideration of the structure, the parties reached the proposed settlement presented herein. The parties believe the settlement appropriately balances the expenses, risks, and possible outcomes of protracted litigation. For the Plaintiff and Settlement Class Members, the proposed settlement will eliminate the risk and delay of litigation and make substantial payments available to all persons believed to have been affected by the alleged pay practices.

## II.     THE TERMS OF THE SETTLEMENT AND RELEASE OF CLAIMS

### A.  The Scope of Settlement

The proposed settlement resolves the disputed claims in two ways.  One, the settlement will resolve the FLSA claims of Plaintiff Arroyo and similarly-situated employees who opt-in to the case pursuant to 29 U.S.C. § 216(b).  Second, the settlement will resolve state-law wage-and-hour claims of all members of the proposed Settlement Class pursuant to Fed. R. Civ. P. 23(e) based upon the facts alleged in Plaintiff's Complaint.

### B.  The Proposed Settlement Payments and Distributions

Total Settlement Amount.  Defendants have agreed to pay the Total Settlement Amount of $215,000.00, as set forth in the Settlement Agreement.

Collective and Class Payments. The Total Settlement Amount, after deduction of a Service Award, Attorneys' Fees, Claims Administrator's Costs, and Reimbursed Litigation Expenses (the "Net Proceeds"), will be distributed to the Plaintiff and Settlement Class Members in individual settlement payments as follows.

Method of Allocation.   All recipients will receive a settlement payment distribution proportionate to their estimated unpaid wages between January 1, 2017 and April 30, 2020 based on their actual time and pay records maintained by Defendants. Those records permitted the parties to closely estimate the actual damages sustained on a per-person basis. All Settlement Class Members will receive an amount exceeding their actual alleged unpaid wages – roughly double the unpaid wages by Plaintiff's calculation - as determined from analysis of Defendants' time and pay records.  A $25.00 payment

will be allocated to all Class Members whose estimated actual unpaid wages fell below that amount.

<u>Distribution of Notice</u>.  The parties shall jointly select a Claims Administrator. Within ten days of the Preliminary Approval Order being filed by the Court, Defendants will provide to Plaintiff's Counsel and the Claims Administrator all last known mailing addresses for all individuals in the Roster at Appendix A to Exhibit 1.  Within ten days of those addresses being provided, the Claims Administrator shall distribute Notice via regular mail.  The Notice dictates that any requests for exclusion from the Class or objections to the Settlement be made in writing to the Claims Administrator within 45 days of distribution of the Notice.

<u>Opt-In Procedure</u>.  Checks to Settlement Class Members will bear the following language:

> By signing, depositing, cashing or otherwise negotiating this check, I consent to be a party plaintiff in *Arroyo v. Wesleyan Village, LLC, et al.*, and release and waive all claims under the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.*  By signing, depositing, cashing or otherwise negotiating this check, I will be a party plaintiff accepting the settlement check, not opting out of the settlement, and giving up the right to sue under the Fair Labor Standards Act and state wage and hour laws.

Signature, deposit, cashing, or negotiation of the check will constitute opting into this settlement pursuant to 29 U.S.C. §216(b).  Settlement Class Members will have 270 days from initial distribution of settlement checks to sign, deposit, cash, or otherwise negotiate their checks.  A list of those who opted into the settlement with copies of their signed checks will be filed at the conclusion of that 270-day period by Plaintiff's counsel.  Settlement Agreement, Exhibit 1, ¶ 5.

<u>Service Award</u>.  The proposed Settlement provides for a service award of $5,000.00 to Plaintiff Amanda Arroyo in recognition of her assistance to Plaintiff's Counsel and her vital contribution to achieving the Settlement on behalf of all Opt-Ins and Class Members.

<u>Attorneys' Fees and Cost Reimbursements</u>.  The proposed settlement includes a payment of $52,638.95 to Plaintiff's counsel for attorneys' fees and $2,361.05 in reimbursement of litigation costs.

<u>Claims Administrator's Costs</u>.  The parties have selected Rust Consulting to administer the settlement, including distributing notice, re-distributing notices that are returned as undeliverable, creating a qualified settlement fund, distributing awards to the opt-ins and class, and distributing tax forms to the opt-ins and class.  The proposed settlement includes payment of $9,440 to Rust Consulting as compensation for those services.

### III.    THE PROPRIETY OF APPROVAL

As to the Plaintiffs and Opt-Ins, the settlement must qualify for Court approval under the FLSA, 29 U.S.C. § 216(b).  The Court must ensure "there is a bona fide dispute between the parties as to the employer's liability under the FLSA" and that the proposed settlement "is fair, reasonable, and adequate."  *Kritzer v. Safelite Solutions, LLC*, 2012 U.S. Dist. LEXIS 74994, at *19 (S.D. Ohio May 30, 2012).  *Accord In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 381-82 (S.D. Ohio 2006); *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946))).

Rule 23 requires a two-fold determination.  Rule 23 authorizes the Court to certify the Settlement Class if it satisfies "the four prerequisites of Rule 23(a)"—numerosity, commonality, typicality, and adequate representation—and "meet[s] at least one of the three requirements listed in Rule 23(b)."  *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F. 3d 838, 850 (6th Cir. 2013).  *See Gilbert v. Abercrombie & Fitch Co.*, 2016 U.S. Dist. LEXIS 103441 (S.D. Ohio Aug. 5, 2016) (Order by Smith, J.) (granting preliminary approval of a class settlement) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *Stout v. J.D. Byrider*, 228 F.3d 709, 716 (6th Cir. 2000)); *Kis v. Covelli Enterprises, Inc.*, 2020 U.S. Dist. LEXIS 93929 (N.D. Ohio May 29, 2020) (Gwin, J.) (granting final approval).  Rule 23(e) provides that the Court may approve the class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate."  *See, e.g., Gilbert*, 2016 U.S. Dist. LEXIS 103441, *22 (granting final approval of a class settlement upon the ground that it was "fair, reasonable and adequate as to each of the Parties").  *Accord*, *Kis,* 2020 U.S. Dist. LEXIS 93929, at *7.

The proposed Settlement satisfies all of these prerequisites and standards for purposes of this settlement, as shown below.

## A. <u>The Proposed Settlement Class Should be Certified</u>

Certification of the proposed Settlement Class will enable the parties to resolve the state-law claims of Plaintiff and all other class members.  Rule 23 authorizes the Court to certify a class that satisfies "the four prerequisites of Rule 23(a)"—numerosity, commonality, typicality, and adequate representation—and "meet[s] at least one of the

three requirements listed in Rule 23(b)." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F. 3d 838, 850 (6th Cir. 2013).

**Numerosity.** The proposed Settlement Class consists of two-hundred and ninety-six employees who worked at Wesleyan Village between January 1, 2017 through April 30, 2020.

**Commonality and typicality.** Plaintiff's Complaint asserts claims under Ohio's wage-and-hour laws and Prompt Pay Act on behalf of all Settlement Class Members. All members of the Settlement Class, including Plaintiff, have these claims and evidence of the same alleged damages from Defendants' time and pay records. Adjudicating them on a classwide basis would "generate common answers that are likely to drive resolution of the lawsuit." *Arlington Video Productions, Inc. v. Fifth Third Bancorp*, 2013 WL 560635, at *14 (6th Cir. Feb. 14, 2013).

**Adequacy of Representation.** Plaintiff Arroyo has aggressively pursued the interests of Class Members, and her counsel has extensive experience in class action litigation including wage-and-hour cases. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012) (class representatives "must have common interests with unnamed members" and "it must appear that [they] will vigorously prosecute the interests of the class through qualified counsel") (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996) (citation omitted)).

**Predominance.** Whether Plaintiff and other employees were properly paid overtime and shift differentials were the key issues in this litigation, and those claims were the primary issue driving the proposed Settlement. Common issues clearly

predominate "over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

**Superiority.** The present case is precisely the type of case in which class litigation is the superior method of adjudication. Here, as *In re Whirlpool*, "class members are not likely to file individual actions" because "the cost of litigation would dwarf any potential recovery." *In re Whirlpool*, 722 F.3d at 861 (citing *Amgen*, 133 S. Ct. at 1202; *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997)).

### B. The Proposed Notice Should Be Approved

The proposed Notice to Settlement Class Members ("Notice") should be approved. The Notice describes the background of the case and summarizes the terms of the settlement, including the method of allocating individual payments in return for a release. The Notice informs Settlement Class Members how to object to the Settlement or request exclusion from the Class if they so choose. If approved, the Notice will be sent to Settlement Class Members by first class mail. *See* Fed. R. Civ. P. 23(c)(2) (requiring "the best notice that is practicable under the circumstances, including individual notice to all members … [by] United States mail, electronic means, or other appropriate means"); *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173-77 (1974) ("individual notice" must be given "to all members who can be identified through reasonable effort"); *Zimmer Paper Products, Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985) ("first-class mail … fully satisfy the notice requirements of both [Rule] 23 and the due process clause").

### C. The Settlement Is Fair, Reasonable, and Adequate

In *Gascho v. Global Fitness Holdings, LLC*, 822 F. 3d 269 (6th Cir. 2016), the Sixth

Circuit reaffirmed the seven-factor standard often used to evaluate whether a class settlement is "fair, reasonable, and adequate."

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Gascho*, 822 F. 3d at 276-77 (quoting *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). *See Kritzer v. Safelite Solutions, LLC*, 2012 U.S. Dist. LEXIS 74994, at *19-20 (S.D. Ohio May 30, 2012) (using a variation of the seven-factor standard to evaluate whether the proposed settlement was "fair, reasonable, and adequate" for purposes of the FLSA, 29 U.S.C. 216(b)). *See also Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008) (applying an alternative formulation of the seven-factors) (citing *UAW v. General Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992)); *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir.1983)).

As a part of the scrutiny it applies to an FLSA collective action settlement, the Court should "ensure that the distribution of settlement proceeds is equitable." *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *26 (citing *Rotuna v. West Customer Mgmt. Group, LLC*, No. 4:09cv1608, 2010 WL 2490989, at *6 (N.D. Ohio June 15, 2010) (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999))). *Accord Kis*, 2020 U.S. Dist. LEXIS 93929, at *7.

In the present case, the proposed Settlement will make individual settlement payments to the Plaintiff and the Settlement Class Members according to a fair and

reasonable method of allocation. By Plaintiff's calculation, they will receive over 90% of the compensation (actual and liquidated damages) available to them under the claims pled by Plaintiff in this action. The amounts will be distributed in proportion to their actual losses, as reflected in time and pay records maintained by the Defendants. Those whose actual damages are below $25 will be allocated a payment of $25.

The first factor—the likelihood of success on the merits balanced against the amount and form of the settlement—strongly supports approval. Litigating wage-and-hour claims is always risky and uncertain, and Plaintiff would have to establish not only Defendants' liability, which Defendants vehemently deny, but also the Class Members' damages. The proposed Settlement will eliminate the risk and delay of litigation and make settlement payments to all.

The other six factors are satisfied as well. There is no guarantee that Plaintiff will prevail at trial as Defendants contend that some or all of the compensation at issue is excludable from employees' regular rate of pay calculation. Moreover, even if Plaintiff is successful at trial, the parties dispute whether she and the Class Members are entitled to a three-year (versus two-year) lookback period preceding the filing of this case, or liquidated damages. Plaintiff would have to prove willfulness of Defendants' alleged violations, which Defendants strenuously dispute.

In contrast, the Settlement ensures that the Plaintiffs and Settlement Class Members will receive compensation. Thus, the settlement substantially benefits them, and is in the public interest. *See Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *24 (the public interest is served when a settlement "ends potentially long and protracted litigation").

### D. **The Proposed Service Award Is Proper and Reasonable**

Reasonable service awards "are common in class action settlement[s] and [are] routinely approved for the simple reason 'to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *26 (citing *Rotuna v. West Customer Mgmt. Group, LLC,* No. 4:09cv1608, 2010 WL 2490989, at *7). *Accord*, *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 373 (S.D. Ohio 1990). Service awards are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution of the case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997).

In the present case, the proposed service award to Plaintiff Arroyo is amply justified by her assistance to Plaintiff's Counsel and her vital contribution to achieving the Settlement on behalf of all Opt-Ins and Class Members. She provided extensive information and records to Plaintiff's Counsel, assisted greatly in the analysis of the records produced by Defendants - particularly as to whether those records covered the entire putative class, and participated in the full-day mediation.

### E. **The Attorneys' Fees Are Proper and Reasonable**

Ohio wage-and-hour statutes also provide for "costs and reasonable attorney's fees as may be allowed by the court." Ohio Rev. Code Ann. § 4111.10. In the present case, the proposed payments of $52,638.95 in attorneys' fees and $2,361.05 in reimbursed litigation costs are reasonable. The proposed fees are 24.5% of the Total Settlement

Amount, and will fall far below counsel's lodestar by the time that the case is concluded. *See Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, at *21 (N.D. Ohio Mar. 8, 2010) (study conducted by the National Economic Research Associates found that "regardless of size, attorneys' fees average approximately 32% of [class action] settlement[s]"); *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000) (citing the NERA study as "[t]he most complete analysis of fee awards in class actions conducted to date"). *See Kis,* 2020 U.S. Dist. LEXIS 93929, at *11 (approving a one-third fee award).

**F.** **Plaintiff is Similarly Situated to the Potential Opt-Ins and All Members of the Settlement Class**

FLSA plaintiffs and opt-ins must be "similarly situated to proceed collectively under 29 U.S.C. 216(b). In assessing whether a putative collective action group is similarly situated, the Court must analyze "(1) the factual and employment settings of the individual plaintiffs; (2) the different defenses to which the plaintiffs may be subject on an individual basis; and (3) the degree of fairness and procedural impact of certifying the action as a collective action." *Monroe v. FTS USA, LLC*, 860 F.3d 389, 397 (6th Cir.2017). Employees are similarly situated to each other when their claims "are unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.* at 398.

All potential Opt-Ins and Settlement Class Members are similarly situated to Plaintiff Amanda Arroyo. Their factual and employment settings are identical with respect to the issues in this case. Ms. Arroyo, the potential Opt-Ins, and Settlement Class Members were all non-exempt hourly employees at Wesleyan Village Defendants

between January 1, 2017 and April 30, 2020.  *Declaration of Class Counsel*, at Exhibit 4, ¶ 8. Defendants provided complete timekeeping and payroll records for the time period relevant to this case for these employees.  *Id*. at ¶ 7.  Those records revealed that Defendants' hourly employees were paid for their overtime hours at a rate of 1.5 times employees' base hourly rate of pay.  *Id*. at ¶ 8.

Amanda Arroyo, the Potential Opt-Ins, and Settlement Class Members were routinely paid various other types of remuneration in addition to their hourly rate – e.g., bonuses for picking up certain extra shifts, stipends for on-call shifts, shift differentials, stipends for forgoing employee benefits, etc.  *Id*.  In calculating the "regular rate" from which the overtime premium is calculated, employers must include "all renumeration for employment paid to, or on behalf of, the employee," subject to a few specified exclusions under 29 U.S.C. § 207(e).  *Id*.  Plaintiff alleges that Defendants were required to incorporate those other types of remuneration when calculating the rate to be paid for overtime hours worked by their employees, and that Defendants uniformly failed to do so.  *Id*.

Plaintiff similarly alleged that, based on the payroll records of Amanda Arroyo, the Potential Opt-Ins, and Settlement Class Members, Defendants had failed to pay promised shift differentials to hourly employees when they worked 2nd and 3rd shifts.  *Id*. at ¶ 9.  The affected employees had the same claim for due and owing agreed-upon shift differentials, and this group essentially overlapped with the regular rate group, since shift differentials made up a large part of Plaintiff's "regular rate" allegation described above.  *Id*.

The potential defenses to each of these claims are also the same for the whole collective group.  The inclusion each type of additional remuneration claimed by Plaintiff to be a requisite part of the "regular rate" calculation is a question applicable to the whole collective.  Moreover, employees were promised shift differentials as a group, not on any individual basis.  Whether they were paid those differentials is a matter of record in Defendants' payroll reports.

Finally, as all parties jointly request certification, the fairness and procedural impact factor weighs in favor of allowing the case to proceed collectively.

**G.  The Proposed Release and 29 U.S.C. § 216(b) Release are Proper**

The proposed settlement includes a fair and efficient method of obtaining participants' consent pursuant to 29 U.S.C. § 216(b).  Plaintiff Arroyo has given her § 216(b) consent via a consent form filed with the Court at ECF No. 1-1.  The proposed Notice informs other similarly situated employees that they will become parties to the case, and release FLSA claims against Defendants, by depositing, cashing or otherwise negotiating settlement checks (e.g., by accepting the money) on which § 216(b) consent is printed.  The settlement checks also inform potential Opt-Ins of the consequence of signing and depositing their checks – i.e., releasing their FLSA claims against Defendants. Lists of such persons and copies of their negotiated checks will be filed with the Court by Plaintiff at the conclusion of the 270-day period for checks to be negotiated.  Settlement Agreement, at Exhibit 1, ¶ 5.

This proposed procedure, with functionally identical release language, has been approved by the courts throughout the country, including in the Northern District of Ohio.

In *Lazarin v. Pro Unlimited, Inc.*, No. C11-03609 HRL, 2013 WL 3541217 (N.D. Cal. July 11, 2013), class members "opt[ed] in to the FLSA Class, and release[d] their claims under the FLSA, by cashing their settlement checks." *Id.* at *7. The court found that this was both fair and efficient, noting that "as described in the Notice," class members "were not required to submit a claim form in order to receive a settlement payment." *Id.*

> If Class Members do not cash their Settlement Award check, they will not be an FLSA Plaintiff and will not release any claims they may have under the FLSA. Unless Class Members exclude themselves from the Settlement, or opt out of the California Class, all of the other claims alleged in the case or that reasonably arise out of the facts alleged in the case will be released upon final approval of the Settlement by the Court.

*Lazarin*, 2013 WL 3541217, at *10.

The approach approved in *Lazarin* has been endorsed by other courts in multiple states and districts. *See, e.g., Seghroughni v. Advantus Rest., Inc.*, No. 8:12-CV-2000-T-23TBM, 2015 WL 390329, at *2-3 n.* (M.D. Fla. Jan. 28, 2015) ("[b]y endorsing his or her settlement check, each FLSA Class Member shall release Defendants from all FLSA claims, as well as state wage and hour claims, that were brought in the Litigation"); *Ortiz v. Chop't Creative Salad Co. LLC*, No. 13 CIV. 2541 KNF, 2014 WL 1378922, at *2 (S.D.N.Y. Mar. 25, 2014) (class members were informed that "[b]y cashing the settlement check, you agree to join the Collective Action"); *Lizondro-Garcia v. Kefi LLC*, No. 12 CIV. 1906 HBP, 2014 WL 4996248, at *2 (S.D.N.Y. Oct. 7, 2014) ("Defendants will not be released from the

19

FLSA claims of FLSA collective members who do not endorse their settlement checks"). *Accord*, *Franco v. Ruiz Food Products, Inc.*, No. 1:10-CV-02354-SKO, 2012 WL 5941801, at *24 (E.D. Cal. Nov. 27, 2012) (approving hybrid FLSA and state-law settlement in which settlement checks stated that "[b]y endorsing this check, I consent to join the Class in *Franco, et. al. v. Ruiz Food Products, Inc.*, elect to participate in the Settlement, and agree to release all of my claims that are covered by the Settlement"); *Pham v. Quadgen Wireless Solutions, Inc.*, E.D. Pa. No. 17-cv-2894, 2020 U.S. Dist. LEXIS 37985, at *16-17 (Mar. 3, 2020) (approving hybrid FLSA and state-law settlement in which "[t]he release will be printed on the back of the settlement checks," "[d]epositing the settlement check will effectuate the release of the claims," and the release was "limited to wage and hour claims only—not a broad release of all imaginable claims."

Judge Gwin recently approved of this identical procedure in Plaintiff's counsel's case.  *See Coleman v. Patel*, N.D. Ohio Case No. 1:20-cv-00925, at ECF Nos. 42, 44, and 50.

The proposed Notice here informs class members of the legal effect of the settlement (i.e., binding them unless they request exclusion from the settlement class pursuant to Rule 23) and the effect of endorsing their settlement check (i.e., opting into the collective action pursuant to 29 U.S.C. § 216(b) and releasing their FLSA claims against Defendants).  The parties' release language for Opt-Ins releases all FLSA claims, whereas the language for Settlement Class Members is limited to "claims under all state law wage and hour laws deriving from the factual predicate set forth in Plaintiff's Complaint.:" Settlement Agreement, at Exhibit 1, ¶¶ 9-10.   Copies of the signed checks will be filed at the conclusion of the 270-day period to negotiate checks.

IV.    <u>**CONCLUSION**</u>

For the reasons addressed above, the parties respectfully request that the Court

enter the Proposed Preliminary Approval Order, attached as Exhibit 2.

Respectfully submitted,

 */s/ Scott D. Perlmuter*
SCOTT D. PERLMUTER (0082856)
**TITTLE & PERLMUTER**
4106 Bridge Avenue
Cleveland, OH 44113
Phone:216-285-9991
Fax: 888-604-9299
Email: scott@tittlelawfirm.com

*Attorney for Plaintiff*


*/s/ William Mattes*
William M. Mattes
Jacqueline N. Rau
Justin M. Burns
Dinsmore & Shohl - Columbus
Ste. 300
191 West Nationwide Blvd.
Columbus, OH 43215
614-628-6883
Fax: 614-628-6890
Email: bill.mattes@dinsmore.com
Email: jacqueline.rau@dinsmore.com
Email: justin.burns@dinsmore.com

*Attorneys for Wesleyan Village, LLC and*
*Northwood Healthcare Group, LLC*

*/s/ Robert Bowes*
Robert J. Bowes , III
Vincent J. Tersigni
Jackson Lewis - Cleveland
400 Park Center Plaza I
6100 Oak Tree Blvd.

Cleveland, OH 44131
216-750-0404
Fax: 216-750-0826
Email: robert.bowes@jacksonlewis.com
Email: vincent.tersigni@jacksonlewis.com

*Attorneys for Life Care Services, LLC*

PROOF OF SERVICE

I certify that on this February 3, 2022 the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

*s/ Scott D. Perlmuter*
Scott D. Perlmuter (0082856)