UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| AMANDA ARROYO<br>On behalf of herself and all others<br>similarly situated,<br><br>       Plaintiff,<br>v.<br><br>WESLEYAN VILLAGE, LLC, et al.,<br><br>       Defendants. | CASE NO. 1:20-cv-00866-CAB<br><br>JUDGE CHRISTOPHER A. BOYKO<br><br>**SUPPLEMENTAL JOINT MOTION FOR APPROVAL COLLECTIVE ACTION SETTLEMENT AND MODIFICATION OF CLASS ACTION SETTLEMENT** |

On August 24, 2022, at ECF No. 32, this Court granted the parties' Amended Joint Motion for Preliminary Approval of Class and Collective Settlement only with respect to Plaintiff's class action claims under Fed. R. Civ. P. 23. The parties' request in that same motion for approval of the Fair Labor Standards Act collective action settlement was denied, with the Court holding that "unless the parties seeking to join the collective action affirmatively file signed consents with the Court prior to final approval, the Court will not approve the FLSA portion of the settlement." *Opinion and Order*, at ECF No. 34, p. 8.

The parties file this instant supplemental joint motion to remedy the Court's concern in that regard. In particular, the notice attached hereto as Exhibit 4 appends a consent form, to be returned by those wishing to opt-into the FLSA settlement before a final order is to be issued in this case.

Moreover, so that FLSA Opt-Ins are provided consideration for their release of their federal law claims, thirty-five percent of the net settlement proceeds will be

earmarked for and paid only to the FLSA Opt-Ins. The effect of that procedure will be to modestly reduce the amount payable to the Rule 23 Settlement Class who do not opt-into the FLSA settlement. Thus, this motion also requests modification of the proposed Rule 23 settlement amount.

As fully set forth below, the parties jointly move the Court to (1) conditionally certify this case as a collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), (2) certify a proposed Settlement Class pursuant to Fed. R. Civ. P. 23, (3) preliminarily approve the proposed settlement of Settlement Class Members' state-law claims pursuant to Rule 23(e), (4) approve a proposed notice to potential Opt-Ins and Settlement Class Members, and (5) schedule a Final Fairness Hearing at which final approval may be determined. A Proposed Preliminary Approval Order is attached as Exhibit 3. A proposed Final Order will be filed in advance of the Fairness Hearing, and Plaintiff's counsel will simultaneously file a declaration report as to the existence or absence of class members seeking exclusion.

The terms of the proposed Settlement are set forth in the parties' Revised Agreement of Settlement and Release ("Settlement Agreement") attached as Exhibit 1. The Settlement will apply to Plaintiff Arroyo, the Opt-Ins who join the case pursuant to 29 U.S.C. § 216(b), and all members of the proposed Settlement Class. The Potential Opt-Ins and Settlement Class members are coextensive, consisting of:

> All non-exempt hourly employees who worked at the Wesleyan Village Senior Living Center between January 1, 2017 and April 30, 2020 and for whom Defendants' time and pay records support claims for alleged underpayment of shift differentials or overtime compensation in one or

more pay periods and whose claims are not preempted by the Labor Management Relations Act.

*See* Settlement Agreement (Exhibit 1) at ¶ 4. These individuals are identified in the Roster of Settlement Class Members jointly prepared by the parties and attached as Exhibit 2.

The Settlement will resolve bona fide disputes involving overtime compensation under Ohio Rev. Code Ann. § 4111.03 and Ohio's Prompt Pay Act. Plaintiff alleged that she and other similarly-situated employees were underpaid for shift differentials, and/or overtime compensation. Defendants denied and continue to deny those claims.

The parties are represented by experienced counsel. Extensive investigation was conducted on both sides and settlement negotiations were rigorous. The parties believe the resulting agreement appropriately balances the expenses, risks, and possible outcomes of protracted litigation on the merits. For Plaintiff, the potential FLSA Opt-Ins, and proposed Settlement Class Members, the Settlement will eliminate the risk and delay of litigation and make substantial payments available to all persons believed to be entitled to them.

The following settlement documents and proposed orders are submitted for approval or entry by the Court:

| | |
|---|---|
| Exhibit 1: | Agreement of Settlement and Release ("Settlement Agreement") |
| Exhibit 2: | Roster of Settlement Class Members |
| Exhibit 3: | Proposed Preliminary Approval Order (providing for notice and hearing) |
| Exhibit 4: | Proposed Notice to Settlement Class Members |

Exhibit 5: Declaration of Class Counsel Scott Perlmuter

The sections below explain the litigation, the negotiations, the Settlement terms, the proposed settlement payments and distributions, and the propriety of approval.

I. **THE LITIGATION**

The parties hereby incorporate the assertions set forth in their prior filings, particularly pages 3 through 6 of the parties' motion at ECF No. 32, regarding the history of this litigation, the claims at issue, and the due diligence engaged in by the parties. Thus, that background is not fully restated herein.

To briefly recap the most salient information, Plaintiff alleged that she and other similarly-situated employees at Wesleyan Village Senior Living Center ("Wesleyan Village") were underpaid overtime compensation as a result of Defendants' omission of certain non-excludable remuneration in their regular pay rate calculation, and were also underpaid certain promised shift differentials. Defendant Wesleyan Village, LLC, owner of Wesleyan Village, and Defendants Life Care Services, LLC and Northwood Healthcare Group, LLC, each of which provided management services at Wesleyan Village in the time period relevant to this case, denied all claims.

The parties informally exchanged extensive discovery consisting of complete time and payroll data for Plaintiff and similarly situated employees and privately mediated the case on September 28, 2020, without initial success. Through further data production and analysis, and months of continued negotiations, terms and structure of a settlement were agreed to in late 2021. Initially, the parties planned on a Rule 23-only settlement. (ECF No. 27). Subsequently, the parties decided to expand their agreement to include

FLSA claims and moved for approval of a hybrid FLSA/Rule 23 settlement on January 10, 2022. (ECF No. 30).

This Court initially took issue with two matters in the parties' proposed FLSA settlement: (1) the process by which FLSA consents would be executed and filed with the Court, and (2) the "similarly-situated" nature of the potential FLSA Opt-Ins. On February 23, 2022, at ECF No. 32, the parties filed an Amended Joint Motion for Preliminary Approval of Class and Collective Action Settlement.

Per the Court's August 24, Order at ECF No. 34, that amended filing resolved the latter concern (i.e., it established that the potential Opt-Ins were similarly-situated), but it did not resolve the Court's concerns about the notice/consent procedure for FLSA Opt-Ins. Specifically, the Court held as follows:

> [U]nder the parties' settlement proposal there is no collective action at this point in the proceedings and in fact, will never be one until after the case is dismissed… Therefore, the Court holds that unless the parties seeking to join the collective action affirmatively file signed consents with the Court prior to final approval, the Court will not approve the FLSA portion of the settlement.

ECF No. 34, at pp. 7, 9.

Accordingly, the parties have proposed herein a revision of the settlement structure to ameliorate that problem. The revised notice to the Settlement Class/potential FLSA Opt-Ins includes a Consent Form and provides a forty five-day period for potential Opt-Ins to return that form in order to participate in the FLSA settlement (the "Consent Period"). Of the total settlement proceeds available for distribution to the affected employees, 35% will be earmarked for those who opt-into the FLSA settlement, and

distributed in proportion to their estimated unpaid wages between January 1, 2017 and April 30, 2020 based on their actual time and pay data maintained by Defendants. The remaining 65% will be split among the entire Settlement Class (including those who submit Consent Forms) also in proportion to their estimated unpaid wages between January 1, 2017 and April 30, 2020 based on their actual time and pay data maintained by Defendants.

The parties believe the settlement appropriately balances the expenses, risks, and possible outcomes of protracted litigation, and fully resolves the Court's concerns about the FLSA settlement process.

## II. THE TERMS OF THE SETTLEMENT AND RELEASE OF CLAIMS

### A. The Scope of Settlement

The proposed settlement resolves the disputed claims in two ways. One, the settlement will resolve the FLSA claims of Plaintiff Arroyo and similarly-situated employees who opt-in to the case pursuant to 29 U.S.C. § 216(b). Second, the settlement will resolve state-law wage-and-hour claims of all members of the proposed Settlement Class pursuant to Fed. R. Civ. P. 23(e) based upon the facts alleged in Plaintiff's Complaint.

### B. The Proposed Settlement Payments and Distributions

<u>Total Settlement Amount</u>. Defendants have agreed to pay the Total Settlement Amount of $215,000.00, as set forth in the Settlement Agreement.

<u>Collective and Class Payments</u>. The Total Settlement Amount, after deduction of a Service Award, Attorneys' Fees, Claims Administrator's Costs, and Reimbursed

Litigation Expenses (the "Net Proceeds"), will be distributed to Plaintiff, the Opt-Ins, and the Settlement Class Members in individual settlement payments as follows.

Method of Allocation. 35 percent of the Net Proceeds – i.e., $51,185.75 – will be distributed to those members of the Settlement Class who timely return Consent Forms in accordance with the procedure set forth below. The remaining 65 percent, $95,059.25, will be distributed to the Settlement Class. Both portions of the distribution, the thirty-five percent payable to the FLSA Opt-Ins and the sixty-five percent payable to the whole Settlement Class, will be made in proportion to their respective estimated unpaid wages between January 1, 2017 and April 30, 2020 based on their actual time and pay data maintained by Defendants. FLSA Opt-Ins will receive an amount which is estimated by Plaintiff's counsel to equal 100% of their maximum recovery for damages sustained between January 1, 2017 and April 30, 2020 under the claims pled by Plaintiff in this litigation, inclusive of actual and liquidated alleged damages. Those Settlement Class Members who do not return Consent Forms will receive an amount which is estimated by Plaintiff's counsel to be roughly equivalent to 100% of their actual alleged unpaid wages sustained between January 1, 2017 and April 30, 2020 as gleaned from an analysis of Defendants' time and pay records. A $25.00 payment will be allocated to all Class Members whose estimated actual unpaid wages fell below that amount.

Distribution of Notice, Request for Exclusion, and Opt-In Procedure. The parties have jointly selected Rust Consulting as Claims Administrator. Within ten days of the Preliminary Approval Order being filed by the Court, Defendants will provide to Plaintiff's Counsel and the Claims Administrator all last known mailing addresses for all

individuals in the Roster at Exhibit 2. Within ten days of those addresses being provided, the Claims Administrator shall distribute the Notice and Consent Form via regular mail.

The Notice dictates that any requests for exclusion from the Class or objections to the Settlement be made in writing to Plaintiff's Counsel within 45 days of distribution of the Notice. The Notice further informs Settlement Class Members of their right to participate in the FLSA settlement by returning to Plaintiff's Counsel an executed Consent Form within the 45-day Consent Period. All returned Consent Forms will be filed with the Court by Plaintiff's Counsel within 10 days of the close of the Consent Period. A Table of Individual Payments will be submitted to the Court after the expiration of the 45-day Consent Period/period for requesting exclusion pursuant to Rule 23.

Service Award. The proposed Settlement provides for a service award of $5,000.00 to Plaintiff Amanda Arroyo in recognition of her assistance to Plaintiff's Counsel and her vital contribution to achieving the Settlement on behalf of all Opt-Ins and Class Members.

Attorneys' Fees and Cost Reimbursements. The proposed settlement includes a payment of $52,638.95 to Plaintiff's counsel for attorneys' fees and $2,361.05 in reimbursement of litigation costs.

Claims Administrator's Costs. The parties have selected Rust Consulting to administer the settlement, including distributing notice, re-distributing notices that are returned as undeliverable, creating a qualified settlement fund, distributing awards to the opt-ins and class, and distributing tax forms to the opt-ins and class. The proposed

settlement includes payment of $8,755.00 to Rust Consulting as compensation for those services.

### III. THE PROPRIETY OF APPROVAL

As to the Plaintiffs and Opt-Ins, the settlement must qualify for Court approval under the FLSA, 29 U.S.C. § 216(b). The Court must ensure "there is a bona fide dispute between the parties as to the employer's liability under the FLSA" and that the proposed settlement "is fair, reasonable, and adequate." *Kritzer v. Safelite Solutions, LLC*, 2012 U.S. Dist. LEXIS 74994, at *19 (S.D. Ohio May 30, 2012). *Accord In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 381-82 (S.D. Ohio 2006); *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946))).

Rule 23 requires a two-fold determination. Rule 23 authorizes the Court to certify the Settlement Class if it satisfies "the four prerequisites of Rule 23(a)"—numerosity, commonality, typicality, and adequate representation—and "meet[s] at least one of the three requirements listed in Rule 23(b)." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F. 3d 838, 850 (6th Cir. 2013). *See Gilbert v. Abercrombie & Fitch Co.*, 2016 U.S. Dist. LEXIS 103441 (S.D. Ohio Aug. 5, 2016) (Order by Smith, J.) (granting preliminary approval of a class settlement) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *Stout v. J.D. Byrider*, 228 F.3d 709, 716 (6th Cir. 2000)); *Kis v. Covelli Enterprises, Inc.*, 2020 U.S. Dist. LEXIS 93929 (N.D. Ohio May 29, 2020) (Gwin, J.) (granting final approval). Rule 23(e) provides that the Court may approve the class settlement

"only after a hearing and on finding that it is fair, reasonable, and adequate." *See, e.g., Gilbert*, 2016 U.S. Dist. LEXIS 103441, \*22 (granting final approval of a class settlement upon the ground that it was "fair, reasonable and adequate as to each of the Parties"). *Accord*, *Kis,* 2020 U.S. Dist. LEXIS 93929, at \*7.

The Court previously held that the proposed settlement "satisfies the Rule 23 class action requirements of numerosity, typicality, commonality, superiority and adequacy of counsel. (ECF No. 34, p. 7). The proposed Settlement similarly satisfies all of these prerequisites and standards for purposes of this settlement, as shown below, and also resolves the Court's concerns about the FLSA consent process.

### A. The Proposed Settlement Class Should be Certified

Certification of the proposed Settlement Class will enable the parties to resolve the state-law claims of Plaintiff and all other class members. Rule 23 authorizes the Court to certify a class that satisfies "the four prerequisites of Rule 23(a)"—numerosity, commonality, typicality, and adequate representation—and "meet[s] at least one of the three requirements listed in Rule 23(b)." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F. 3d 838, 850 (6th Cir. 2013).

The Court previously certified Plaintiff's proposed Rule 23 class in ECF No. 34. The proposed modification of the settlement as set forth herein does not affect any of Rule 23's requirements, and thus should not affect Rule 23 certification.

### B. The Proposed Notice Should Be Approved

The proposed Notice to Settlement Class Members ("Notice") should be approved. In all respects relevant to Fed. R. Civ. P. 23, the Notice is unchanged. It adequately

describes the background of the case and summarizes the terms of the settlement, including the method of allocating individual payments in return for a release. The Notice informs Settlement Class Members how to object to the Settlement or request exclusion from the Class if they so choose.

With respect to the proposed FLSA settlement, the Notice includes a Consent Form, and informs potential Opt-Ins that they must fill out and return the Consent Form within the Consent Period in order to participate in that part of the settlement. Executed Consent Forms will be filed with the Court by Plaintiff's Counsel within 10 days of the close of the Consent Period.

### C. The Settlement Is Fair, Reasonable, and Adequate

In *Gascho v. Global Fitness Holdings, LLC*, 822 F. 3d 269 (6th Cir. 2016), the Sixth Circuit reaffirmed the seven-factor standard often used to evaluate whether a class settlement is "fair, reasonable, and adequate."

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Gascho*, 822 F. 3d at 276-77 (quoting *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). *See Kritzer v. Safelite Solutions, LLC*, 2012 U.S. Dist. LEXIS 74994, at *19-20 (S.D. Ohio May 30, 2012) (using a variation of the seven-factor standard to evaluate whether the proposed settlement was "fair, reasonable, and adequate" for purposes of the FLSA, 29 U.S.C. 216(b)). *See also Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, at *3 (E.D. Ky.

Oct. 23, 2008) (applying an alternative formulation of the seven-factors) (citing *UAW v. General Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992)); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)).

As a part of the scrutiny it applies to an FLSA collective action settlement, the Court should "ensure that the distribution of settlement proceeds is equitable." *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *26 (citing *Rotuna v. West Customer Mgmt. Group, LLC*, No. 4:09cv1608, 2010 WL 2490989, at *6 (N.D. Ohio June 15, 2010) (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999))). *Accord Kis,* 2020 U.S. Dist. LEXIS 93929, at *7.

In the present case, the proposed Settlement will make individual settlement payments to the Plaintiff, the Opt-Ins, and the Settlement Class Members according to a fair and reasonable method of allocation. By Plaintiff's calculation, Opt-Ins will receive roughly 100% of the maximum compensation (actual and liquidated damages) available to them under the claims pled by Plaintiff in this action. Settlement Class Members who do not opt-into the FLSA settlement will still receive roughly 150% of their actual damages under the claims pled by Plaintiff in this action. The amounts will be distributed to all will be in proportion to their actual losses, as reflected in time and pay records maintained by the Defendants.

The first factor—the likelihood of success on the merits balanced against the amount and form of the settlement—strongly supports approval. Litigating wage-and-hour claims is always risky and uncertain, and Plaintiff would have to establish not only Defendants' liability, which Defendants vehemently deny, but also the Settlement Class

Members' damages. The proposed Settlement will eliminate the risk and delay of litigation and make settlement payments to all.

The other six factors are satisfied as well. There is no guarantee that Plaintiff will prevail at trial as Defendants contend that some or all of the compensation at issue is excludable from employees' regular rate of pay calculation. Moreover, even if Plaintiff is successful at trial, the parties dispute whether she and the Class Members are entitled to a three-year (versus two-year) lookback period preceding the filing of this case, or liquidated damages. Plaintiff would have to prove willfulness of Defendants' alleged violations, which Defendants strenuously dispute.

In contrast, the settlement ensures that Plaintiff, the Opt-Ins, and Settlement Class Members will receive compensation. Thus, the settlement substantially benefits them, and is in the public interest. *See Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *24 (the public interest is served when a settlement "ends potentially long and protracted litigation").

### D. The Proposed Service Award Is Proper and Reasonable

Reasonable service awards "are common in class action settlement[s] and [are] routinely approved for the simple reason 'to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *26 (citing *Rotuna v. West Customer Mgmt. Group, LLC,* No. 4:09cv1608, 2010 WL 2490989, at *7). *Accord*, *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 373 (S.D. Ohio 1990). Service awards are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case

13

and advising counsel in prosecution of the case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997).

In the present case, the proposed service award to Plaintiff Arroyo is amply justified by her assistance to Plaintiff's Counsel and her vital contribution to achieving the Settlement on behalf of all Opt-Ins and Settlement Class Members. She provided extensive information and records to Plaintiff's Counsel, assisted greatly in the analysis of the records produced by Defendants - particularly as to whether those records covered the entire putative class, and participated in the full-day mediation.

### E. <u>The Attorneys' Fees Are Proper and Reasonable</u>

Ohio wage-and-hour statutes also provide for "costs and reasonable attorney's fees as may be allowed by the court." Ohio Rev. Code Ann. § 4111.10. In the present case, the proposed payments of $52,638.95 in attorneys' fees and $2,361.05 in reimbursed litigation costs are reasonable. The proposed fees are 24.5% of the Total Settlement Amount, and will fall far below counsel's lodestar by the time that the case is concluded. *See Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, at *21 (N.D. Ohio Mar. 8, 2010) (study conducted by the National Economic Research Associates found that "regardless of size, attorneys' fees average approximately 32% of [class action] settlement[s]"); *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000) (citing the NERA study as "[t]he most complete analysis of fee awards in class actions conducted to date"). *See Kis*, 2020 U.S. Dist. LEXIS 93929, at *11 (approving a one-third fee award).

### F. Plaintiff is Similarly Situated to the Potential Opt-Ins and All Members of the Settlement Class

FLSA plaintiffs and opt-ins must be "similarly situated to proceed collectively under 29 U.S.C. 216(b). In assessing whether a putative collective action group is similarly situated, the Court must analyze "(1) the factual and employment settings of the individual plaintiffs; (2) the different defenses to which the plaintiffs may be subject on an individual basis; and (3) the degree of fairness and procedural impact of certifying the action as a collective action." *Monroe v. FTS USA, LLC*, 860 F.3d 389, 397 (6th Cir.2017). Employees are similarly situated to each other when their claims "are unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.* at 398.

All potential Opt-Ins and Settlement Class Members are similarly situated to Plaintiff Amanda Arroyo. Their factual and employment settings are identical with respect to the issues in this case. Ms. Arroyo, the potential Opt-Ins, and Settlement Class Members were all non-exempt hourly employees at Wesleyan Village Defendants between January 1, 2017 and April 30, 2020. *Declaration of Class Counsel*, at Exhibit 5, ¶ 8. Defendants provided complete timekeeping and payroll records for the time period relevant to this case for these employees. *Id.* at ¶ 7. Those records revealed that Defendants' hourly employees were paid for their overtime hours at a rate of 1.5 times employees' base hourly rate of pay. *Id.* at ¶ 8.

Amanda Arroyo, the potential Opt-Ins, and Settlement Class Members were routinely paid various other types of remuneration in addition to their hourly rate – e.g.,

bonuses for picking up certain extra shifts, stipends for on-call shifts, shift differentials, stipends for forgoing employee benefits, etc. *Id.* In calculating the "regular rate" from which the overtime premium is calculated, employers must include "all renumeration for employment paid to, or on behalf of, the employee," subject to a few specified exclusions under 29 U.S.C. § 207(e). *Id.* Plaintiff alleges that Defendants were required to incorporate those other types of remuneration when calculating the rate to be paid for overtime hours worked by their employees, and that Defendants uniformly failed to do so. *Id.*

Plaintiff similarly alleged that, based on the payroll records of Amanda Arroyo, the potential Opt-Ins, and Settlement Class Members, Defendants had failed to pay promised shift differentials to hourly employees when they worked 2nd and 3rd shifts. *Id.* at ¶ 9. The affected employees had the same claim for due and owing agreed-upon shift differentials, and this group essentially overlapped with the regular rate group, since shift differentials made up a large part of Plaintiff's "regular rate" allegation described above. *Id.*

The potential defenses to each of these claims are also the same for the whole collective group. The inclusion each type of additional remuneration claimed by Plaintiff to be a requisite part of the "regular rate" calculation is a question applicable to the whole collective. Moreover, employees were promised shift differentials as a group, not on any individual basis. Whether they were paid those differentials is a matter of record in Defendants' payroll reports.

bonuses for picking up certain extra shifts, stipends for on-call shifts, shift differentials, stipends for forgoing employee benefits, etc. *Id.* In calculating the "regular rate" from which the overtime premium is calculated, employers must include "all renumeration for employment paid to, or on behalf of, the employee," subject to a few specified exclusions under 29 U.S.C. § 207(e). *Id.* Plaintiff alleges that Defendants were required to incorporate those other types of remuneration when calculating the rate to be paid for overtime hours worked by their employees, and that Defendants uniformly failed to do so. *Id.*

Plaintiff similarly alleged that, based on the payroll records of Amanda Arroyo, the potential Opt-Ins, and Settlement Class Members, Defendants had failed to pay promised shift differentials to hourly employees when they worked 2nd and 3rd shifts. *Id.* at ¶ 9. The affected employees had the same claim for due and owing agreed-upon shift differentials, and this group essentially overlapped with the regular rate group, since shift differentials made up a large part of Plaintiff's "regular rate" allegation described above. *Id.*

The potential defenses to each of these claims are also the same for the whole collective group. The inclusion each type of additional remuneration claimed by Plaintiff to be a requisite part of the "regular rate" calculation is a question applicable to the whole collective. Moreover, employees were promised shift differentials as a group, not on any individual basis. Whether they were paid those differentials is a matter of record in Defendants' payroll reports.

Finally, as all parties jointly request certification, the fairness and procedural impact factor weighs in favor of allowing the case to proceed collectively.

IV. **CONCLUSION**

For the reasons addressed above, the parties respectfully request that the Court enter the Proposed Preliminary Approval Order, attached as Exhibit 3.

Respectfully submitted,

*/s/ Scott D. Perlmuter*
SCOTT D. PERLMUTER (0082856)
**TITTLE & PERLMUTER**
4106 Bridge Avenue
Cleveland, OH 44113
Phone:216-285-9991
Fax: 888-604-9299
Email: scott@tittlelawfirm.com

*Attorney for Plaintiff*


*/s/ William Mattes*
William M. Mattes
Jacqueline N. Rau
Justin M. Burns
Dinsmore & Shohl - Columbus
Ste. 300
191 West Nationwide Blvd.
Columbus, OH 43215
614-628-6883
Fax: 614-628-6890
Email: bill.mattes@dinsmore.com
Email: jacqueline.rau@dinsmore.com
Email: justin.burns@dinsmore.com

*Attorneys for Wesleyan Village, LLC and Northwood Healthcare Group, LLC*

*/s/ Vincent Tersigni*
Vincent J. Tersigni

Jackson Lewis - Cleveland
400 Park Center Plaza I
6100 Oak Tree Blvd.
Cleveland, OH 44131
216-750-0404
Fax: 216-750-0826
Email: vincent.tersigni@jacksonlewis.com

*Attorneys for Life Care Services, LLC*

PROOF OF SERVICE

      I certify that on this November 7, 2022 the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

                                    *s/ Scott D. Perlmuter*
                                    Scott D. Perlmuter (0082856)